**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JANELLE WRIGHT<br>768 Church Road,<br>Elkins Park, PA 19027 | : | CIVIL ACTION NO. 2:21-cv-04414 |
|  | : |  |
|  | : |  |
|  | : |  |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
|  | : |  |
| v. | : |  |
|  | : |  |
| NORTHEAST TREATMENT<br>CENTERS, INC., d/b/a<br>NORTHEAST TREATMENT CENTERS.,<br>499 N. 5th Street<br>Philadelphia, PA 19123 | : | |
|  | : |  |
| And | : |  |
|  | : |  |
| NET TREATMENT SERVICES, INC.,<br>499 N. 5th Street,<br>Philadelphia, PA 19123 | : | |
|  | : |  |
| Defendants. | : | |

**AMENDED COMPLAINT – CIVIL ACTION**

Plaintiff, Janelle Wright ("Plaintiff"), by and through her undersigned attorney, for her

Complaint against Northeast Treatment Centers, Inc. ("Northeast Treatment Centers") and NET

Treatment Services, Inc. ("NET Treatment Services"), alleges as follows: Plaintiff brings this

Complaint contending that Defendants have violated the Americans with Disabilities Act, 42

U.S.C. § 12101, *et seq.* ("ADA"), and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila.

Code §§ 9-1101 to 9-1129, by discharging Plaintiff on account of her actual and/or perceived

disabilities; and in retaliation for requesting a reasonable accommodation in connection thereto.

Additionally, Plaintiff avers that Defendants have violated the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601, *et seq.* by terminating Plaintiff in retaliation for requesting and

seeking leave under the FMLA; and by interfering with Plaintiff's rights to protected leave under the FMLA.  As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

1.      Plaintiff Janelle Wright is an adult American citizen residing at 768 Church Road, Elkins Park, PA 19027.

2.      Upon information and belief, Defendant Northeast Treatment Centers, Inc. is a non-profit organization doing business in and under the laws of the Commonwealth of Pennsylvania with a registered principal office address of 499 N. 5th Street, Philadelphia, PA 19123.

3.      Upon information and belief, Defendant NET Treatment Services, Inc. is a non-profit organization doing business in and under the laws of the Commonwealth of Pennsylvania with a registered principal office address at 499 N. 5th Street, Philadelphia, PA 19123.

## JURISDICTION AND VENUE

4.      Paragraphs 1 through 2 are hereby incorporated by reference as though the same were fully set forth at length herein.

5.      On or about March 2, 2020, Plaintiff filed a Complaint with the Equal Opportunity Employment Commission ("EEOC"), which was dual filed with the Philadelphia Commission on Human Relations ("PCHR") thereby satisfying the requirements of 42 U.S.C. §§ 12117(a); 2000e-5(b) and (e).  Plaintiff's Complaint was docketed as EEOC Charge number 530-2020-00311. Plaintiff's Complaint was filed within one hundred and eighty (180) days of the unlawful employment practice, i.e. discrimination on account of a disability.

6.      By correspondence dated September 10, 2021, Plaintiff received a Notice of Rights to Sue from the EEOC regarding her Charge of Discrimination, advising her that she had ninety (90) days to file suit against Defendant Northeast Treatment Centers, Inc.

7.       Defendants Northeast Treatment Centers, Inc, and NET Treatment Services, Inc. are registered with the Pennsylvania Secretary of State at the same address – 499 N. 5th Street, Philadelphia, PA 19123.

8.       Northeast Treatment Centers and NET Treatment Services are both registered with the Pennsylvania Secretary of State as active non-profit organizations.

9.       Upon information and belief, Defendants Northeast Treatment Centers and NET Treatment Services are/were at all times relevant hereto, a joint, single, and/or integrated employer with respect to the employees of Northeast Treatment Centers, located at 499 N. 5th Street, Philadelphia PA 19123 and the employees of NET Treatment Services, located at 499 N. 5th Street, Philadelphia, PA 19123.

10.      Plaintiff filed the instant matter within the relevant statutory timeline.

11.      Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

12.      This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"), the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code §§ 9-1101 to 9-1129, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*.

13.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

14.      This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as the federal claims.

15.      The venue in this District is proper pursuant to 28 U.S.C. § 1391, inasmuch as the events giving rise to this action occurred in this District.

**FACTS**

16.    Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

17.    Defendants hired Plaintiff on or about April 16, 2014, in the position of Case Manager. At all times material hereto, Plaintiff received positive reviews of her performance, occasional promotions and raises, and no justifiable discipline. Specifically, Plaintiff was promoted to Supervisor in December of 2014 and then promoted again to the position of full-time Director of Case Management in June of 2018.

18.    On or about August 23, 2019, Plaintiff broke her Fibula/Tibia Bone and required surgery on August 23, 2019 in connection thereto. As a result, Plaintiff began FMLA leave in connection with this injury on August 23, 2019. Plaintiff's Doctor's note lists August 23, 2019 as Plaintiff's start date and September 23, 2019 as Plaintiff's return to work date.

19.    On or about September 17, 2019, Plaintiff had a follow up appointment with her doctor where she was given work restrictions, including but not limited to keeping her leg elevated and using a wheelchair.

20.    Immediately thereafter, Plaintiff notified Defendants' Benefits Coordinator, Erica Gonzales ("Ms. Gonzalez"), of her work restrictions, and requested reasonable accommodations in connection thereto. These included but were not limited to: restricting Plaintiff's job duties to non-weight bearing activities, holding meetings involving Plaintiff in areas with elevator access, allowing Plaintiff to work in a wheelchair, allowing Plaintiff to prop her foot up during work, and allowing Plaintiff occasional absences in connection with treatment of her injury.

21.    Plaintiff returned to work under the aforementioned light duty restrictions on or about September 23, 2019.

4

22.     Notably, on or about September 25, 2019, less than two (2) weeks before Plaintiff's termination, Chris Waiters, ("Mr. Waiters") advised Plaintiff that she was "one of the most instrumental employees" of Defendants. Plaintiff was given praise of this nature continually and regularly by Mr. Waiters and Regan Kelly ("Ms. Kelly").

23.     On or about late September or early October, a review hearing was scheduled for October 4, 2019, to discuss a recently deceased infant in Defendants' care. By way of background, the meeting was a review hearing with the Department of Human Services ("DHS"), regarding a child who had passed away during the time period Plaintiff was out of work on approved FMLA leave. Due to her role as Director, Plaintiff did not have any contact with this infant or with the infant's parents. Instead, Plaintiff oversaw four Case Management Supervisors and their teams which consisted of five Case Managers each.  The death of this infant took place on or about September 2 or September 3 of 2019, while Plaintiff was out on approved FMLA leave.

24.     On or about October 4, 2019, Plaintiff contacted Defendants' Executive Director, Mr. Waiters, and advised him that she could not attend the October 4, 2019 meeting as a result of her foot being swollen in connection with her aforementioned surgery. Specifically, Plaintiff sent Mr. Waiters a photograph of her foot to evidence same, and a text message informing Mr. Waiters that she would not be in to work that day prior to 7:00am on October 4, 2019.

25.     On or about October 8, 2019, a mere eleven work days after Plaintiff's return from FMLA leave, and four days after the date Plaintiff took off of work in connection with her surgery, Plaintiff was abruptly terminated by Mr. Waiters. Defendants' proffered reason for this termination was that Defendants "expected [Plaintiff] to come in," for the meeting on October 4, 2019, despite Plaintiff's foot being swollen.

26.     Given the aforementioned circumstances and timing, Plaintiff believes and thus avers that Defendants terminated her employment because of her actual and/or perceived disabilities, such disabilities Defendants regarded her as having, for her past record of impairment, and in retaliation for requesting an accommodation as well as her complaints in connection thereto in violation of the ADA and the PFPO.

27.     Plaintiff further avers that Defendant willfully violated the FMLA by terminating Plaintiff in retaliation for requesting and seeking leave under the FMLA

28.     As a result of Defendants' deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her reputation.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, et seq.
## DISCRIMINATION AND RETALIATION

29.     Paragraphs 1 through 24 are hereby incorporated by reference as though the same were fully set forth at length herein.

30.     At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

31.     At all times relevant hereto, Defendants had at least fifteen (15) employees.

32.     Plaintiff is a qualified individual with a disability within the meaning of the ADA.

33.     As described above, Plaintiff's conditions are physical impairments that substantially limited Plaintiff in one or more major life activities, including walking and running.

34.     Defendants were aware of Plaintiff's disabilities.

35.     Plaintiff requested a reasonable accommodation in connection to her disabilities.

36.     Upon information and belief, Defendants retaliated against Plaintiff for her requests for reasonable accommodations in connection to her disabilities.

37.     By reason of the foregoing, Defendants, through their agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff on account of her disabilities, and in retaliation for Plaintiff 's requests for reasonable accommodations in connection to her disabilities.

38.     As a result of Defendants' deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant her the maximum relief allowed by law, including, but not limited to:

A.     Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendants for their intentional, negligent, willful, wanton, and/or malicious conduct;

C.     Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D.     Pre-judgment interest in an appropriate amount;

E.     Such other and further relief as is just and equitable under the circumstances; and

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

### COUNT II
### PHILADLEPHIA FAIR PRACTICES ORDINANCE
### § 9-1100, et seq.
### DISCRIMINATION AND RETALIATION

39. Paragraphs 1 through 34 are hereby incorporated by reference as if the same were more fully set forth at length herein.

40. At all times relevant hereto, Plaintiff was an employee within the meaning of the Philadelphia Fair Practice Ordinance Code, § 9-1100, *et seq.*

41. At all times relevant hereto, Defendants had at least one (1) employee.

42. Plaintiff is a qualified individual with a disability within the meaning of the PFPO.

43. As described above, Plaintiff's conditions are physical impairments that substantially limited Plaintiff in one or more major life activities, including walking and running.

44. Defendants were aware of Plaintiff's disabilities.

45. Plaintiff requested a reasonable accommodation in connection to her disabilities.

46. Defendants failed to accommodate Plaintiff's reasonable requests for her disabilities.

47. Upon information and belief, Defendants retaliated against Plaintiff for her requests for reasonable accommodations in connection to her disabilities.

48. By reason of the foregoing, Defendants, through its agents, officers, servants, and/or employees, has violated the PFPO by terminating Plaintiff on account of her disabilities and/or in retaliation for requesting an accommodation in connection to her disability.

49.     As a result of Defendants' deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant her the maximum relief allowed by law, including, but not limited to:

A.      Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.      Compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendants for their intentional, negligent, willful, wanton, and/or malicious conduct;

C.      Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D.      Pre-judgment interest in an appropriate amount;

E.      Such other and further relief as is just and equitable under the circumstances; and

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

### COUNT III
### THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. § 2601, *et seq.*
### <u>RETALIATION</u>

50. Paragraphs 1 through 45 are hereby incorporated by reference as though the same were fully set forth at length herein.

9

51. Defendants employed at least fifty (50) employees at its various office locations within the applicable seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of twenty (20) or more calendar days in the current or preceding year.

52. Plaintiff was an eligible employee under the FMLA and entitled to up to twelve (12) weeks of unpaid leave for her serious health condition.

53. Plaintiff provided adequate notice to Defendants of her need for medical leave by giving notice as soon as she became aware of the need for leave and as soon as was practicable, pursuant to 29 U.S.C. § 2612(e).

54. Defendants willfully violated the FMLA by terminating Plaintiff in retaliation for requesting and seeking leave under the FMLA.

55. The aforementioned actions of Defendants constitute retaliation under the FMLA.

56. As a result of Defendants' actions, Plaintiff has suffered significant damages.

57. Plaintiff has, because of Defendants' wrongful termination of Plaintiff's employment, suffered loss of employment, promotion benefits, earnings and earnings potential, other significant benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant her the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00):

B.    Liquidated damages;

C.    Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D.      Pre-judgment interest in an appropriate amount; and

E.      Such other and further relief as is just and equitable under the circumstances.

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the
financial recovery available to Plaintiff in light of the caps on certain damages as
set forth by applicable law.


## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.


Respectfully submitted,


**MURPHY LAW GROUP, LLC**


By: _s/ Brendan Mehler, Esq_____
     Brendan Mehler, Esq.
     Michael Murphy, Esq.
     Eight Penn Center, Suite 2000
     1628 John F. Kennedy Blvd.
     Philadelphia, PA 19103
     TEL: 267-273-1054
     FAX: 215-525-0210
     bmehler@phillyemploymentlawyer.com
     murphy@phillyemploymentlawyer.com
     *Attorneys for Plaintiff*


Dated: November 5, 2021

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.